**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PNNSYLVANIA**

| | |
|---|---|
| HELENA GRAHAM, individually and on behalf of all other similarly situated, | Case No. 25-432 |
| *Plaintiffs,* | Judge |
| v. | JURY TRIAL DEMANDED |
| PHH MORTGAGE CORPORATION, d/b/a, PHH MORTGAGE SERVICES; AMERICAN SECURITY INSURANCE COMPANY; and ASSURANT, INC. | **CLASS ACTION COMPLAINT** |
| *Defendants, jointly and severally.* | |

<u>**CLASS ACTION COMPLAINT**</u>

AND NOW come the Plaintiff, Helena Graham (hereinafter, "Plaintiff"), on behalf of herself and all others similarly situated, by and through their attorneys, and file this Class Action Complaint, alleging as follows:

<u>**INTRODUCTION**</u>

1.     This is a proposed class action brought by Plaintiff Helena Graham (referred to herein as "Plaintiff") on behalf of herself and all other similarly situated homeowners who have or had residential mortgage loans owned and/or serviced by Defendant PHH Mortgage Corporation, d/b/a PHH Mortgage Services  (hereinafter "PHH Mortgage") and, in connection therewith, were required to pay for lender placed or "force-placed" hazard insurance policies.

2.     In the event that borrowers fail to maintain their hazard insurance policies, rather than attempt to maintain delinquent borrowers' existing policies, certain mortgage loan lenders and/or servicers choose to replace borrowers' insurance policies with more expensive ones, known as lender-placed or "force-placed" insurance policies.

1

3.     In this action, Plaintiff challenges, among other things and as further described herein, Defendant's practice of purchasing force-placed hazard insurance from a provider pursuant to an agreement that returns a financial benefit to Defendant and/or its affiliates that is unrelated to any contractual or other *bona fide* interest in protecting PHH's interest in the loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed hazard insurance in violation of law.  Upon information and belief, Defendants are engaged in a 'kick back' scheme for which they have previously come under judicial scrutiny.

4.     In this action, Plaintiff challenges, among other things and as further described herein, Defendant's practice of purchasing force-placed hazard insurance from a provider pursuant to an agreement that returns a financial benefit to Defendant and/or its affiliates that is unrelated to any contractual or other bona fide interest in protecting PHH's interest in the loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed hazard insurance in violation of law.

5.     As described herein, Defendant has engaged in unlawful, abusive and unfair practices with respect to force-placed insurance, including, among others and as described in further detail below:

    a.  providing force-placed insurance according to pre-arranged agreements with insurers, including, without limitation, Assurant, Inc. ("Assurant"), and affiliates of Assurant, including American Security Insurance Company ("American Security"), at a substantial and inappropriately high cost to the borrower;

    b.  receiving fees, payments, commission and/or other things of value from providers of force-placed insurance; and

    c.  forcing borrowers to pay for unnecessary insurance.

2

6.    Defendant's unlawful actions include, *inter alia*, purchasing unconscionably high priced insurance policies, entering into pre-arranged agreements to acquire force-placed insurance without any regard whatsoever for competitive pricing, and entering into pre-arranged agreements that yield exorbitant force-placed insurance in order to maximize their own profits to the detriment of borrowers. These actions constitute a pattern of exploitative profiteering and self-dealing against the interest of Plaintiff and the Class and in violation of the law.

7.    Upon information and belief, Defendant has effectuated a captive reinsurance scheme whereby, in violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"):

   a.   illegal referral payments in the form of purported reinsurance premiums are paid by force-placed insurance providers to Defendant's own subsidiaries/affiliates; and/or

   b.   Defendant receives an unlawful split of insurance premiums paid by borrowers.

   c.   Defendants conspired to overcharge insurance premiums by knowingly and intentionally inflating the fair market value of the property.

   d.   Defendants conspired to place unreasonable and unlawful financial burdens upon consumers with the expectation of financial gains in the form of monetary payments and increased incidence of mortgage foreclosure.

8.    Upon information and belief, Defendant has also negotiated deals with force-placed insurance providers, including subsidiaries of Assurant, pursuant to which Defendant, and/or its subsidiaries/affiliates:

   a.   Receive a portion of the premiums for each force-placed insurance policy purchased for a borrower; and/or

3

b.   Assume a portion of the force-placed insurance policies originally written by force-placed insurance providers without any real or commensurate transfer of risk.

9.     This scheme constitutes disguised, unlawful referral fees in violation of RESPA's anti-kickback provisions, as well as a violation of RESPA's ban on accepting a percentage of settlement-service fees other than for services actually performed. Further, this scheme constitutes unfair, unlawful, and unconscionable business practices and is in violation of the mortgage contracts of Plaintiff and the Class.

10.     This scheme constitutes false, deceptive, and misleading business practices regarding the justifications and representations of fair market value of properties to unreasonably inflate forced-placed insurance policies.

11.     In this action, Plaintiff challenge Defendant's unlawful conduct as violative of RESPA and seek statutory damages under RESPA. In addition, Plaintiff asserts state/common law claims, as Defendant has breached its contractual obligations, including its implied covenant of good faith and fair dealing, owed to Plaintiff and the other Class members and has engaged in unconscionable, deceptive and/or fraudulent business practices in violation of Pennsylvania law as further described below.

12.     In the present action, Plaintiff is not challenging Defendant's ability to force-place insurance policies and to charge fees/premiums at large. Rather, Plaintiff challenges the manner in which Defendant manipulated the force-placed insurance process for its own financial gain and as part of a scheme to generate financial hardships upon consumers which would ultimately inure to the benefit of the Defendants, including, unreasonably high insurance premiums, increased incidence of mortgage foreclosures, and other financial gains.

13.    At issue in this case is whether Defendant breached the express and/or implied terms of the mortgage contract (including the covenant of good faith and fair dealing), and/or violated state and federal statutory provisions by unreasonably, unconscionably and unlawfully exercising its contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits. In this action, Plaintiff challenges Defendant's unlawful conduct and seeks statutory and compensatory damages, restitution for Defendant's unjust enrichment, declaratory, injunctive and other equitable relief.

## SUMMARY OF CLAIMS

14.    The Defendants violated the Real Estate Settlement Procedures Act (RESPA) by engaging in practices prohibited under § 2607, which forbids kickbacks, referral fees, and unearned fee splits in connection with settlement services for federally-related mortgage loans. Specifically:

a)    Defendants entered into pre-arranged agreements with force-placed insurance providers to receive referral payments and portions of insurance premiums, contrary to § 2607(a), which states that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding."

b)    The Defendants' conduct also breached § 2607(b), which prohibits the splitting of charges other than for services actually rendered. By accepting portions of the premiums without providing commensurate services, the Defendants violated this provision.

c)    This practice inflated the cost of force-placed insurance policies, depriving borrowers of competitive pricing. The Plaintiff and Class Members are entitled to

statutory damages amounting to three times the amounts paid for force-placed insurance premiums, per § 2607(d)(2).

15.    The Defendants breached the terms of standard mortgage agreements, which include obligations to act reasonably and in good faith in force-placing insurance.

a)    While the mortgage contracts granted Defendants discretion to impose insurance if borrowers failed to maintain coverage, this discretion was limited by the implied covenant of good faith and fair dealing, a principle embedded in contract law. Defendants violated this covenant by:

   a.    Backdating policies to periods where no risk of loss existed, contrary to the reasonable expectation that force-placed insurance is applied prospectively.

   b.    Selecting insurance providers and policies that excessively exceeded the coverage necessary to protect their interest in the property, inflating costs far beyond market value.

   c.    Failing to seek competitively priced policies and instead entering into financially motivated arrangements with preferred insurers.

   d.    Breaching the duty of good faith and fair dealing, by conspiring to force-place excessive insurance policies, subjecting consumers to increased premiums, increasing financial gains and incidence of mortgage foreclosure.

b)    These actions violated express provisions in the contracts requiring Defendants to act in a manner consistent with protecting the secured property and breached the spirit and intent of the agreements.

16.    Under Pennsylvania common law, Defendants owed fiduciary duties to borrowers when exercising control over escrow accounts and selecting force-placed insurance. These duties include fidelity, loyalty, care, and transparency. Defendants breached these fiduciary duties as follows:

a)  By selecting force-placed insurance providers based on undisclosed financial arrangements (e.g., kickbacks, commissions), rather than prioritizing the interests of borrowers.

b)  By failing to disclose material conflicts of interest in their arrangements with insurers, violating the duty of disclosure.

c)  By imposing excessive and unreasonable premiums that benefited the Defendants at the expense of the Plaintiff and Class Members.

d)  By backdating policies and charging for unnecessary coverage during periods where no risk of loss existed, further mismanaging escrow funds and breaching their fiduciary role.

17.    The UTPCPL prohibits "[u]nfair methods of competition" and "[u]nfair or deceptive acts or practices," including "[f]raudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" (73 P.S. § 201-2(4)). Defendants violated these provisions by:

a)  Failing to disclose that force-placed insurance policies were selected based on financial arrangements and improper motives rather than borrower needs.

b)  Misrepresenting the necessity and scope of backdated insurance coverage and its associated costs, creating a likelihood of confusion.

7

c)  Using their discretion to select unreasonably priced policies far exceeding the cost required to protect the lender's interest in the property, constituting unconscionable practices under § 201-2(4)(xxi).

d)  Conspiring to force-place unreasonable insurance premiums based upon an inflated fair market value assessment of the property.

e)  Conspiring to subject consumers to financial hardship for financial gains including kickbacks, inflated premiums, and increased incidence of mortgage foreclosure.

f)  Plaintiff and Class Members are entitled to actual damages, treble damages, and attorneys' fees under § 201-9.2(a).

18.    Violation of the Dodd-Frank Act and Implementing Regulations (12 U.S.C. § 5301 et seq. and 12 C.F.R. § 1024.37): The Defendants violated the Dodd-Frank Act and its regulations under RESPA, which require servicers to adhere to specific notice and disclosure requirements before imposing force-placed insurance. Specifically:

a)  12 C.F.R. § 1024.37(c) mandates that servicers provide an initial notice to borrowers explaining the lack of evidence of insurance and warning of force-placement if evidence is not provided. The Defendants failed to provide this initial notice to the Plaintiff.

b)  12 C.F.R. § 1024.37(d) requires a reminder notice at least 30 days after the initial notice, confirming the servicer's intent to impose force-placed insurance. Defendants failed to issue this notice as well.

c)  The Defendants' failure to comply with these notice requirements deprived borrowers of the opportunity to demonstrate existing coverage or secure alternate

policies, directly violating the transparency and consumer protection goals of the Dodd-Frank Act.

d)    Additionally, Defendants engaged in unfair and deceptive practices prohibited under 12 U.S.C. § 5536(a) by charging borrowers for unnecessary, backdated, and excessive insurance coverage.

## PARTIES

19.    Plaintiff Helena Graham is an individual and citizen of the state of Pennsylvania. Ms. Graham purchased her home located at 217 Barrett Road, Willow Grove, PA 19090-3118 on December 30, 1999, for $133,000. Over the years, her mortgage has been serviced by multiple entities, culminating in its assignment to Defendant PHH Mortgage Corporation following PHH's acquisition of Ocwen in 2018.

20.    Defendant PHH Mortgage Corporation is a New Jersey corporation with its principal place of business in Mount Laurel, New Jersey. PHH Mortgage describes itself as a leading mortgage servicer, managing a portfolio of loans across the United States. It engages in the business of servicing residential mortgage loans, including the imposition and management of lender-placed hazard insurance policies. PHH Mortgage acquired Ocwen Financial Corporation in 2018, thereby assuming control over servicing mortgages previously managed by Ocwen, including Ms. Graham's mortgage.

21.    American Security Insurance Company ("ASIC") is a Delaware corporation with its principal place of business in Atlanta, Georgia and is a subsidiary of Assurant, Inc. that does business throughout the United States.  ASIC writes force-placed insurance policies in all fifty

states and the District of Columbia. ASIC also provides services to PHH in relation to its force-placed insurance practices, including, but not limited to:

    a.   Tracking borrower's loan to determine the existence of hazard insurance;

    b.   Placing force-placed insurance for PHH when there has been a lapse, and

    c.   Handling all customer services duties related to force-placed insurance.

22.    Assurant, Inc. ("Assurant") is a Delaware corporation with its principal place of business located in Atlanta, Georgia that does business throughout the United States. American Security Insurance Company is a wholly owned subsidiary of Assurant, Inc.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 12 U.S.C. § 2614.

24.    This Court also has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiff and many members of the Class are citizens of different states than Defendant. The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members in the proposed Class.

25.    In addition, this Court has diversity jurisdiction over Plaintiff's state law claims

26.    pursuant to 28 U.S.C. §1332(a). The matter in controversy is greater than $75,000 and this matter is between citizens of different states. This Court also has supplemental jurisdiction over Plaintiff's state law claims.

27.    Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this district.

## FACTS

28.     Plaintiff Helena Graham purchased her home located at 217 Barrett Road, Willow Grove, PA 19090-3118, on December 30, 1999, for $133,000.

29.     Plaintiff financed the purchase of her home through a mortgage, which was refinanced multiple times:

    a.   On January 28, 2000, Plaintiff obtained a mortgage for $113,050 from Equicredit.

    b.   On August 3, 2004, Plaintiff refinanced her mortgage with Argent Mortgage Company for $154,000.

    c.   On January 4, 2006, Plaintiff refinanced again with Argent Mortgage Company for $225,000.

    d.   Argent Mortgage Company was acquired by Citigroup in 2007, and the mortgage was later assigned to Ocwen Loan Servicing in 2017.

    e.   In 2018, Defendant PHH Mortgage Corporation ("PHH" or "Defendant") acquired Ocwen Loan Servicing and began servicing Plaintiff's mortgage.

30.     Plaintiff's mortgage included an escrow account to collect funds for property taxes and hazard insurance premiums.

31.     Under the terms of the mortgage, Plaintiff was required to maintain hazard insurance on the property. If Plaintiff failed to do so, Defendant was authorized to obtain hazard insurance, also known as "force-placed" insurance, and charge the costs to Plaintiff's escrow account.

32.     From January 2022 through April 2023, Plaintiff maintained a hazard insurance policy with American Security Insurance Company at a monthly premium of $239.38.

33.     In April 2023, Plaintiff purchased a yearlong hazard insurance policy from Openly Inc. for $2,899.72, providing coverage from March 2023 to March 2024. The policy included the following coverages:

    a) Coverage A (Dwelling): Guaranteed replacement cost up to $5 million

    b) Coverage B (Other Structures): $40,000

    c) Coverage C (Personal Property): $200,000

    d) Coverage D (Loss of Use): $80,000

34.     From October 2023 through December 2023, Defendant charged Plaintiff $1,398.25 for hazard insurance through American Security Insurance Company despite Plaintiff's active policy with Openly Inc.

35.     On December 21, 2023, Defendant sent Plaintiff a letter stating that her hazard insurance policy would expire on March 28, 2024. However, the notice was deficient under the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. § 2601 et seq.), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. § 5301 et seq.), and Pennsylvania Uniform Trade Practices and Consumer Protection Law (73 P.S.A. § 201-1 et seq.), for several reasons:

    a) It failed to adequately inform Plaintiff of the possibility that force-placed insurance could be imposed if a lapse in coverage occurred, contrary to 12 C.F.R. § 1024.37(c)(1)(i), which requires servicers to notify borrowers of the potential for such action.

    b) It did not provide clear details on the potential cost or terms of force-placed insurance, including how it might differ from Plaintiff's existing policy, as required by 12 C.F.R. § 1024.37(c)(1)(ii).

c) It omitted an explanation of Plaintiff's rights and the procedures for providing proof of alternative coverage, violating 12 C.F.R. § 1024.37(c)(1)(iii).

d) It neglected to follow the mandatory timeline for delivering notices, as outlined in 12 C.F.R. § 1024.37(c) and (d). Specifically, Defendant failed to send a second, required reminder notice at least 30 days after the initial notice.

36. These omissions reflect Defendant's failure to comply with the statutory scheme established under RESPA and the Dodd-Frank Act, which requires servicers to provide borrowers with sufficient information and time to remedy lapses in hazard insurance coverage. Defendant's deficient notice deprived Plaintiff of the opportunity to address or mitigate the consequences of the impending policy lapse, undermining the consumer protections and transparency guaranteed by these laws.

37. Moreover, this letter was the only notice Plaintiff received regarding the expiration of her hazard insurance policy, which is also insufficient under the applicable statutory and regulatory framework. Under 12 C.F.R. § 1024.37(c) and (d), as authorized by the Dodd-Frank Act's amendments to RESPA, servicers must provide two separate notices before imposing force-placed insurance:

a) The first, an initial notice, must inform the borrower of the servicer's lack of evidence of adequate insurance coverage, the potential imposition of force-placed insurance, and the borrower's right to provide proof of coverage.

b) The second, a reminder notice, must be sent at least 30 days after the initial notice and must reiterate the servicer's intent to charge for force-placed insurance if evidence of coverage is not provided within 15 days.

38.     By providing only one substantively deficient notice, Defendant failed to comply with both the procedural and substantive requirements of RESPA, as amended by the Dodd-Frank Act. This failure deprived Plaintiff of adequate notice and a meaningful opportunity to avoid force-placed insurance charges by securing or demonstrating existing coverage.

39.     In January 2024, Defendant refunded the $1,398.25 charged for hazard insurance through American Security Insurance Company, acknowledging that Plaintiff was already covered under the Openly Inc. policy during the overlapping period.

40.     After March 2024, Plaintiff's hazard insurance policy with Openly Inc. lapsed, and Plaintiff did not secure a new hazard insurance policy for the property.

41.     On July 12, 2024, Defendant acquired a new force-placed hazard insurance policy for Plaintiff's property.

42.     On July 18, 2024, Defendant sent Plaintiff a letter informing her of the acquisition of the new force-placed hazard insurance policy.

43.     The force-placed hazard insurance policy obtained by Defendant through American Security Insurance Company was effective from March 28, 2024, to February 28, 2025. The premium for this policy was $36,951.00. The policy provided two types of coverage:

   a)  Coverage A (Dwelling): $5,000,000

   b)  Coverage B (Other Structures): 10% of Coverage A ($500,000)

44.     The new force-placed insurance policy obtained by Defendant had a premium of $36,951.00, a staggering increase of approximately 1,175% compared to Plaintiff's prior policy with Openly Inc., which cost $2,899.72. This excessive premium was not properly noticed, in violation of the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. § 2605 et seq.) and its

implementing regulations at 12 C.F.R. § 1024.37, as well as the terms of the mortgage contract. Specifically:

a) Defendant failed to provide Plaintiff with the required initial and reminder notices that explicitly detailed the anticipated cost of the force-placed insurance policy and the significant disparity between the premium of the new policy and Plaintiff's prior coverage, as mandated under 12 C.F.R. § 1024.37(c) and (d).

b) The policy premium far exceeded what was necessary to protect Defendant's interest in the property, breaching the implied covenant of good faith and fair dealing under the mortgage contract, which limits discretionary actions to those reasonably necessary to protect the lender's interest.

45.     Furthermore, Defendant's discretion in acquiring a force-placed insurance policy with a premium of $36,951.00—approximately 12.74 times the cost of Plaintiff's prior policy at $2,899.72—was unreasonable and constituted a breach of the implied duty of good faith and fair dealing inherent in the mortgage contract. The excessive cost of the new policy far exceeded what was reasonably necessary to protect Defendant's interest in the property, violating both the letter and spirit of the agreement.

46.     The implied duty of good faith and fair dealing required Defendant to exercise its discretion in a manner consistent with the reasonable expectations of the parties and the purpose of the mortgage contract. By selecting a policy with an exorbitantly inflated premium and coverage that significantly exceeded the property's needs, Defendant prioritized its financial interests at the expense of Plaintiff, undermining the mutual obligations under the contract. This conduct was not only unreasonable but also inconsistent with industry standards and regulatory expectations for force-placed insurance.

47.     Defendant breached its fiduciary duty by mismanaging Plaintiff's escrow account, seizing escrow balances, and imposing force-placed insurance premiums that caused the account to go deeply negative. The record reveals a pattern of improper practices, culminating in a significant escrow shortage directly attributable to Defendant's selection of an exorbitantly priced force-placed insurance policy. Specifically:

    a)  As of October 2024, Defendant imposed a $36,951.00 force-placed insurance policy, leading to an escrow shortage of $31,833.57, as reflected in the October 2024 Escrow Analysis.

    b)  This shortage dramatically increased Plaintiff's monthly payment from $1,533.67 to $5,222.26—more than tripling the payment obligation.

    c)  Defendant's actions drained Plaintiff's escrow balance, which had been relatively stable in prior months, into a deficit exceeding $22,863.88 by December 2024.

48.     Defendant's fiduciary responsibilities included ensuring that escrow funds were used prudently and solely for legitimate expenses, such as property taxes and reasonably priced insurance. By selecting an unjustifiably high insurance policy, failing to provide adequate notice or alternatives, and seizing escrow balances without regard for Plaintiff's ability to fulfill the inflated payment obligations, Defendant violated its duty of loyalty, care, and transparency.

49.     As a result of these breaches, Plaintiff experienced severe financial harm, including a significant loss of equity in her home, damage to her financial stability, and the ongoing burden of attempting to recover escrow funds misappropriated through Defendant's unreasonable actions.

50.     Defendant's actions in force-placing insurance went far beyond what was reasonably necessary to protect its interest in the property, violating both the express and implied terms of the mortgage contract. The mortgage allowed Defendant to force-place insurance only to

the extent reasonably necessary to protect its financial interest in the secured property. However, Defendant selected a policy with an excessive premium of $36,951.00—approximately 12.74 times greater than Plaintiff's prior policy of $2,899.72.

51.    This policy not only exceeded the coverage needed to protect Defendant's interest in the property but also imposed unjustified financial harm on Plaintiff. Defendant's actions were inconsistent with the spirit and intent of the mortgage contract for the following reasons:

a)    Defendant failed to consider competitively priced alternatives and instead opted for an exorbitantly priced policy, prioritizing its own financial gain over the mutual interests of the borrower and lender.

b)    The excessive policy significantly inflated Plaintiff's escrow obligations, causing her monthly payments to triple, from $1,533.67 to $5,222.26, further undermining the borrower's ability to meet payment obligations.

c)    By failing to provide clear, adequate notice of the policy's terms, costs, and implications, Defendant deprived Plaintiff of the opportunity to seek affordable alternatives or demonstrate coverage under a suitable existing policy.

52.    These actions were not only unreasonable but also constituted bad faith. Defendant's conduct undermined the principle of mutual trust embedded in the mortgage contract and deviated from standard industry practices, which emphasize selecting reasonably priced policies that balance the lender's protection with the borrower's financial stability.

53.    In response to the excessive and unreasonable force-placed hazard insurance policy obtained by Defendant, Plaintiff acquired a new homeowner insurance policy on January 2, 2025, effective through January 3, 2026, to mitigate damages and ensure adequate coverage for her property. This policy, obtained through the Insurance Placement Facility of Pennsylvania, provided

dwelling coverage of $275,000 and personal property coverage of $35,000. The acquisition of this policy demonstrates Plaintiff's efforts to responsibly address the insurance coverage requirements while minimizing further financial harm caused by Defendant's actions.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class for the maximum time period allowable by loan:

55.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and/or (b)(3) on behalf of the following Classes for the maximum time period allowable by law:

**Nationwide Classes:**

a)  **Kickback Class:**

All persons in the United States who have or had a residential mortgage loan or line of credit owned, originated, and/or serviced by PHH Mortgage and, in connection therewith, were required to pay for "force-placed" hazard insurance on the secured property, and who were subjected to illegal kickback arrangements in violation of the Real Estate Settlement Procedures Act (RESPA) and/or the Dodd-Frank Wall Street Reform and Consumer Protection Act, within the applicable statute of limitations.

b)  **Insufficient Notice Class:**

All persons in the United States who have or had a residential mortgage loan or line of credit owned, originated, and/or serviced by PHH Mortgage and, in connection therewith, were required to pay for "force-placed" hazard insurance on the secured

property, and who were subjected to insufficient notice or other statutory violations in violation of the Real Estate Settlement Procedures Act (RESPA) and/or the Dodd-Frank Wall Street Reform and Consumer Protection Act, within the applicable statute of limitations.

**Pennsylvania State Class:**

All persons in the Commonwealth of Pennsylvania who have or had a residential mortgage loan or line of credit owned, originated, and/or serviced by PHH Mortgage and, in connection therewith, were required to pay for "force-placed" hazard insurance on the secured property, and who can recover under common law claims, including breach of contract, breach of fiduciary duty, and violations of the Fair Credit Extension Uniformity Act (FCEUA) and Unfair Trade Practices and Consumer Protection Law (UTPCPL), within the statute of limitations.

56.    Both Classes exclude Defendant and any entity in which Defendant has a controlling interest, as well as their officers, directors, legal representatives, successors, and assigns.

57.    Each Class is so numerous that joinder of all members is impracticable.

58.    A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

59.    Plaintiff's claims are typical of the claims of the Classes.

60.    There are questions of law and fact common to the Classes, the answers to which will advance the resolution of the claims of all Class members and which include, but are not limited to:

i.   Whether Defendants failed to provide the required notices to consumers informing them of their rights, including the ability to mitigate or cure, as mandated by RESPA and/or the Dodd-Frank Act;

ii.  Whether Defendants maintained a policy of referring force-placed insurance business to insurers pursuant to pre-arranged agreements;

iii. Whether Defendant and/or its affiliates received commissions and/or other payments or things of value from force-placed insurance providers;

iv.  Whether Defendant and/or its affiliates participated in arrangements that involved kickbacks and/or the unearned split of fees in connection with settlement services;

v.   Whether subsidiaries and/or affiliates of Defendant received reinsurance premium payments from force-placed insurance providers;

vi.  Whether Defendant received financial benefits from the force-placed insurance provider in the form of insurance monitoring, tracking, and processing services;

vii. Whether Defendants conspired to force-place excessive insurance premiums for financial gain, including increased incidence of mortgage foreclosure;

viii. Whether Defendant force-placed insurance policies provided by an affiliated entity;

ix.  Whether Defendant received payments in connection with force-placed insurance that exceeded the value of any services actually performed;

x.   Whether Defendant wrongfully backdated force-placed insurance policies;

xi.  Whether Defendant required unnecessary or duplicative force-placed insurance;

xii.  Whether Defendant's conduct constituted an unconscionable business practice;

xiii.  Whether Defendant breached the implied covenant of good faith and fair dealing in Plaintiff's and Class Members' mortgages and/or loan contracts;

xiv.  Whether Defendant breached the terms of Plaintiff's and Class Members' mortgages and/or loan contracts;

xv.  Whether Defendant's conduct violated the FCEUA and/or UTPCPL for Pennsylvania Class members;

xvi.  Whether Plaintiff and the Classes suffered ascertainable losses;

xvii.  Whether Defendant is liable to Plaintiff and the Classes for damages and, if so, the measure of such damages; and

xviii.  Whether Plaintiff and the Classes are entitled to declaratory, injunctive, and other equitable relief.

61.  These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual Class members.

62.  Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no claims antagonistic to those of the Classes. Plaintiff has retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiff's counsel will fairly, adequately, and vigorously protect the interests of the Classes.

63.  Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual members of the Classes would create a risk of inconsistent

or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

64.     Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by or against individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

65.     Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

66.     Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.


## CAUSES OF ACTION


### COUNT I
### VIOLATION OF RESPA AND DODD-FRANK ACT, 12 U.S.C. § 5301
### INSUFFICIENT NOTICE
*All Plaintiffs (on behalf of themselves, and all those similarly situated) v. Defendants*
*(jointly and severally)*

67.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

68.    Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 12 U.S.C. § 5301 et seq., to establish legal protections and regulations for fair practices in mortgage servicing, including the imposition of force-placed insurance.

69.    The Dodd-Frank Act's requirements for force-placed insurance are detailed in 12 C.F.R. § 1024.37, which implements the Real Estate Settlement Procedures Act (RESPA). The regulation requires mortgage servicers to adhere to specific notice and disclosure requirements before imposing force-placed insurance on a borrower's property.

70.    Under 12 C.F.R. § 1024.37(c) and (d), servicers must send two notices to the borrower:

    a.    The initial notice must inform the borrower of the servicer's lack of evidence of adequate insurance coverage and state that force-placed insurance will be purchased if proof of coverage is not provided.

    b.    A reminder notice must be sent no earlier than 30 days after the initial notice, reiterating the lapse in coverage and confirming the servicer's intent to charge the borrower for force-placed insurance if no evidence of coverage is received within 15 days of the reminder notice.

71.    Defendant violated the Dodd-Frank Act and 12 C.F.R. § 1024.37 by failing to send Plaintiff and the Class the required notices. Specifically:

    c.    No initial notice was sent to Plaintiff regarding any lapse in insurance coverage or the potential imposition of force-placed insurance;

    d.    No reminder notice was sent to Plaintiff as required by law; and

    e.    Plaintiff was not informed of the premium amount, the nature of the force-placed insurance, or the servicer's financial interest in the policy.

72. Defendant's failure to send these mandatory notices constitutes a direct violation of 12 C.F.R. § 1024.37(c) and (d), which protect borrowers from unexpected charges and ensure transparency in mortgage servicing practices.

73. As a result of these violations, Defendant unilaterally imposed force-placed insurance on Plaintiff's property without providing any legally required notice, depriving Plaintiff of the opportunity to maintain or demonstrate existing coverage, thereby causing unnecessary financial harm.

74. Defendant's actions also constitute unfair, deceptive, or abusive acts or practices under 12 U.S.C. §§ 5531 and 5536(a), which prohibit acts or practices that mislead or harm consumers.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the Class suffered damages, including but not limited to:

76. Paying inflated premiums for force-placed insurance policies;

77. Being charged for backdated coverage that provided no benefit; and

78. Financial harm caused by the lack of compliance with statutory and regulatory safeguards.

79. Plaintiff and the Class seek relief under the Dodd-Frank Act, including:

   a. Actual damages incurred due to Defendant's violations;

   b. Restitution and disgorgement of all profits Defendants unlawfully obtained from force-placed insurance premiums;

   c. Statutory penalties as permitted under the Dodd-Frank Act;

   d. Pre- and post-judgment interest at the maximum rate allowed by law;

e.    Attorneys' fees and costs of litigation pursuant to 12 U.S.C. § 5565(a)(4); and

f.    Any other relief this Court deems just and proper.

**COUNT II**
**VIOLATION OF RESPA, 12 U.S.C. § 2607**
**"Kickbacks"**
*All Plaintiffs (on behalf of themselves, and all those similarly situated) v. Defendants*
*(jointly and severally)*

80.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

81.    Throughout the relevant time period, Defendant provided "settlement services" in respect of "federally-related mortgage loans," as such terms are defined by RESPA §§ 2602(1) and (3).

82.    Defendant unlawfully received "things of value," within the meaning of RESPA § 2602(2), in connection with the referral of force-placed insurance business.

83.    Such amounts constituted fees, kickbacks or things of value pursuant to agreements with force-placed insurance providers that business incident to real estate settlement services involving federally-related mortgage loans would be referred to such insurers. Such practice violated RESPA, 12 U.S.C. 2607(a).

84.    Plaintiff and the Class were, in fact, harmed by Defendants' unlawful scheme.

85.    First, Plaintiff and the Class were, as a matter of law, entitled to purchase settlement services, including hazard insurance, from providers that did not participate in unlawful kickback and/or fee-splitting schemes. Congress has expressly provided for private enforcement of this protected right by empowering consumers to recover statutory damages from offending parties without proof of an overcharge. The plain, unambiguous language of RESPA section 8(d)(2)

indicates that damages are based on the settlement service amount with no requirement that there have been an overcharge. Plaintiff alleges that Defendant has accepted unlawful kickback payments and/or an unearned portion of settlement service charges in violation of RESPA—allegations and claims completely distinct and separate from whether the price they paid for settlement services was excessive.

86.    Second, though not necessary to prevail on their claims, Plaintiff and the Class were, in fact, overcharged for force-placed insurance. Congress has already determined that the aggregate effect of an unlawful kickback/referral arrangement is to unnecessarily inflate the costs consumers pay for real estate settlement services and/or reduce competition among settlement service providers. Thus, kickbacks and unearned fees unnecessarily and artificially inflate settlement service charges.

87.    Defendant therefore violated RESPA, 12 U.S.C. 2607. Pursuant to RESPA, 12 U.S.C. 2607(d), Defendant is liable to Plaintiff and the Class in an amount equal to three times the amounts they have paid or will have paid for force-placed insurance as of the date of judgment.

88.    In accordance with RESPA, 12 U.S.C. 2607(d), Plaintiff also seeks attorneys' fees and costs of suit.

89.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the Class suffered damages, including but not limited to:

     a.  Paying inflated premiums for force-placed insurance policies;

     b.  Being charged for backdated coverage that provided no benefit; and

     c.  Financial harm caused by the lack of compliance with statutory and regulatory safeguards.

90.    Plaintiff and the Class seek relief under RESPA and the Dodd-Frank Act, including:

    a.   Actual damages incurred due to Defendant's violations;

    b.   Restitution and disgorgement of all profits Defendants unlawfully obtained from force-placed insurance premiums;

    c.   Statutory penalties as permitted under the Dodd-Frank Act;

    d.   Pre- and post-judgment interest at the maximum rate allowed by law;

    e.   Attorneys' fees and costs of litigation pursuant to 12 U.S.C. § 5565(a)(4); and

    f.    Any other relief this Court deems just and proper.

<u>**COUNT III**</u>
**BREACH OF CONTRACT**
**(Including Breach of the Implied Covenant of Good Faith and Fair Dealing)**
*All Plaintiffs (on behalf of themselves, and all those similarly situated) v. Defendants*

91.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

92.    Defendant has originated and/or serviced loans evidenced by substantially similar standard form notes and mortgage contracts.

93.    Every contract contains an implied covenant of good faith and fair dealing.

94.    In all of its actions described herein, Defendant acted on its own behalf and/or as the duly authorized agent of the owner or assignee of the mortgage agreements of Plaintiff and the Class members. Defendant was contractually obligated to service the loans of Plaintiff and the Class members pursuant to the terms of their mortgage agreements.

95.    The mortgage contracts of Plaintiff and the Class each contained an implied covenant of good faith and fair dealing, pursuant to which Defendant was bound to exercise the

discretion afforded it under the mortgage contract in good faith and to deal fairly with Plaintiff and the Class in that regard. Defendant is not allowed to evade the spirit of the mortgage contract by exercising discretion afforded it under the mortgage contract to force-place insurance in a manner abusive to borrowers.

96.     Any discretionary authority granted to Defendant under the terms of the mortgage contracts of Plaintiff and the Class was subject to Defendant's implied duty of good faith and fair dealing. Accordingly, to the extent that the mortgage contracts of Plaintiff and the Class permitted Defendant to unilaterally "force-place" insurance, Defendant was obligated not to exercise its discretion to do so in bad faith for its own financial gain for the purposes of maximizing profits at borrowers' expense.

97.     Defendant breached its duties of good faith and fair dealing in at least the following respects, among others:

a.  Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead—for the sole purpose of maximizing its own profits—forcing borrowers to pay for insurance policies from providers of Defendant's choice, such as American Security. These policies needlessly came with substantially greater premiums and less coverage than borrowers' existing policies, while providing a financial benefit to Defendant and/or its affiliates;

b.  Using its discretion to choose a force-placed insurance provider and policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing borrowers to pay for more than the cost of protecting the lender's interest in the secured property;

28

c.  Failing to seek competitively priced insurance on the open market and instead selecting force-placed insurance providers according to pre-arranged secret deals whereby the insurance policies are continually purchased through the same companies;

d.  Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

e.  Backdating force-placed insurance policies to cover time periods which have already passed and for which there was no risk of loss;

f.  Misrepresenting in their force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage for periods during which the lender had no risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss Payable Endorsement or "standard mortgage clause";

g.  Procuring force-placed insurance policies to cover time periods during which the mortgagee is already covered pursuant to a Lender's Loss Payable Endorsement or "standard mortgage clause"; and

h.  Failing to provide borrowers with any meaningful opportunity whatsoever to opt out of having their force-placed insurance policies provided by an insurer with whom Defendant had an affiliate relationship or commission arrangement.

98.  Further, to the extent that the mortgage contracts of Plaintiff and the Class permitted Defendant to unilaterally "force-place" insurance, Defendant was contractually permitted to do so only to the extent reasonably necessary to protect the mortgagee's interest in the secured property.

99.     Nonetheless, Defendant has imposed or collected amounts that exceeded the amounts necessary to protect the mortgagee's interest in the property. Such practices have included, without limitation:

a) Requiring borrowers to pay for insurance coverage that exceeds the amount necessary to protect the mortgagee's interest in the secured property;

b) Backdating force-placed insurance policies, thus requiring borrowers to pay for retroactive coverage despite the fact that the time has lapsed and no loss occurred during the lapsed period; and

c) Requiring borrowers to pay for force-placed insurance policies despite the existence of a Lender's Loss Payable Endorsement or standard mortgage clause that already protects the lender's interest in the property.

100.     By force-placing insurance that goes well beyond the pale of what is required to protect its interests and taking action completely inconsistent with the spirit and intent of the mortgage contract, Defendant has breached its contractual obligations owed to Plaintiff and the Class members.

101.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing and the express terms of the mortgage contracts, Plaintiff and the Class have suffered damages and are entitled to the relief sought herein for such breaches of contract

## COUNT IV
## BREACH OF FIDUCIARY DUTY
*All Plaintiffs (on behalf of themselves, and all those similarly situated) v. Defendants*

102.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

103.    Under federal law and principles recognized by courts in this jurisdiction, a fiduciary duty arises when one party places trust and confidence in another and that party exercises control or authority over the property or financial interests of the first. See *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 150-51 (3d Cir. 2009).

104.    Defendant, as the servicer of Plaintiff's and Class Members' mortgage loans, exercised significant control over escrow accounts, including the selection of force-placed insurance providers, imposition of premiums, and determination of the coverage scope and cost. By exercising such discretion and control, Defendant assumed a fiduciary duty to act in the best interests of Plaintiff and the Class with respect to these matters.

105.    Defendant owed Plaintiff and the Class fiduciary duties of loyalty, care, and disclosure in handling escrow funds and insurance-related matters. These duties required Defendant to avoid self-dealing, act in good faith, and make full disclosures of any conflicts of interest or financial benefits derived from force-placed insurance arrangements. See generally *In re Phar-Mor, Inc. Sec. Litig.,* 900 F. Supp. 784, 786-87 (W.D. Pa. 1995).

106.    Defendant breached its fiduciary duties by prioritizing its financial interests over those of Plaintiff and the Class, engaging in self-dealing, and failing to disclose material information. Specifically, Defendant's breaches include, but are not limited to:

   a.  Selecting force-placed insurance providers based on undisclosed financial arrangements, including kickbacks, commissions, or other improper benefits, rather than securing competitively priced policies in the best interests of borrowers;

   b.  Backdating force-placed insurance policies and charging borrowers for unnecessary coverage during periods with no risk of loss;

    c.   Misrepresenting the necessity and purpose of force-placed insurance policies, while failing to disclose that such policies often provided limited coverage at excessive premiums;

    d.   Imposing excessive and unnecessary insurance premiums and fees to generate financial benefits for itself and affiliated entities; and

    e.   Failing to disclose material conflicts of interest related to its financial arrangements with force-placed insurance providers.

107.    Defendant's conduct was intentional, reckless, outrageous, and carried out in bad faith, constituting a willful disregard for the fiduciary obligations owed to Plaintiff and the Class. See *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004).

108.    As a direct and proximate result of Defendant's breaches of fiduciary duty, Plaintiff and the Class suffered damages, including, but not limited to:

    a.   Payment of excessive premiums for force-placed insurance policies;

    b.   Improper charges for backdated insurance coverage;

    c.   Losses arising from unnecessary or duplicative insurance coverage; and

    d.   Diminished competition in the force-placed insurance market caused by Defendant's undisclosed financial arrangements.

109.    Defendant's breaches unjustly enriched it at the expense of Plaintiff and the prospective Class. Remedies for breach of fiduciary duty include compensatory damages, restitution, and disgorgement of improper financial benefits. See *Burke v. Arcadian Corp.*, 189 F.3d 289, 292 (3d Cir. 1999).

110.    As a direct and proximate result, Plaintiff and the prospective Class are entitled to:

    a.   Compensatory damages, including excessive premiums and improper fees paid;

    b.   Restitution and disgorgement of all improper financial benefits obtained by Defendant;

    c.   Pre- and post-judgment interest as permitted by law;

    d.   Attorneys' fees and costs as permitted by law; and

    e.   Any other relief deemed just and proper by this Court.

## <u>COUNT V</u>
**VIOLATION OF THE FAIR CREDIT EXENSION UNIVORMITY ACT and PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL), 73 P.S. § 201-1 ET SEQ.**
*All Plaintiffs (on behalf of themselves, and all those similarly situated) v. Defendants*

111.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

112.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

113.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), codified at 73 P.S. § 201-1 et seq., applies to a class of consumers, both within and outside of Pennsylvania, who have been harmed as a result of Defendant's conduct.

114.    Pennsylvania's contacts with this dispute are both extensive and weighty. Defendant's scheme was devised, implemented, and directed from Defendant's offices in Pennsylvania. Moreover, Pennsylvania has a substantial interest in preventing fraudulent practices within the state that may have an effect both in Pennsylvania and throughout the rest of the country.

115.    The UTPCPL makes it unlawful to engage in "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of any trade or commerce, which include "[f]raudulent or deceptive conduct which creates a likelihood of confusion or of

misunderstanding," as well as the "[k]nowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission." See 73 P.S. § 201-2(4).

116.    The Fair Credit Extension Uniformity Act (FCEUA), codified at 73 P.S. § 2270.1 et seq., prohibits unfair, false, misleading, deceptive acts or practices in the collection of debts, including imposing charges not authorized by law or the agreement creating the debt and engaging in unconscionable practices.

117.    Defendant violated these statutes in that:

      a.  Defendant's practices constitute "unfair or deceptive acts or practices" as defined by 73 P.S. § 201-2(4) in that they involved fraudulent concealment, misrepresentation, and the knowing omission of material facts intended to mislead consumers, specifically with regard to improper notice of force-placed insurance policies.

      b.  Defendant's conduct created a "likelihood of confusion or of misunderstanding" as prohibited by 73 P.S. § 201-2(4)(xxi).

118.    Defendant's unconscionable acts and practices include, but are not limited to, the following:

      a.  Providing consumers with notices of force-placed insurance that were deficient, misleading, and failed to comply with federal and state regulatory requirements. These notices omitted critical information, including the potential costs and terms of force-placed insurance policies,

and failed to adequately inform consumers of their rights to avoid unnecessary charges.

b.  Misrepresenting in force-placed insurance notices that consumers were obligated to pay for backdated insurance coverage for periods where Defendant faced no risk of loss due to existing coverage.

c.  Failing to provide the required second notice at least 30 days after the initial notice, as mandated by applicable regulations, and omitting material facts about the excessive costs and limited coverage of force-placed policies.

d.  Selecting force-placed insurance providers and policies in bad faith, prioritizing financial kickbacks and commissions over the mutual interests of consumers and Defendant.

e.  Imposing charges for force-placed insurance policies that were excessive, unreasonable, and unnecessary, causing significant financial harm to Plaintiff and the Class.

f.  Failing to disclose material information regarding Defendant's financial arrangements with force-placed insurance providers, including undisclosed commissions and kickbacks.

g.  Using its discretion to select force-placed insurance policies in a manner that contravened the reasonable expectations of the parties and exceeded what was necessary to protect Defendant's financial interest in the property.

h. Backdating force-placed insurance policies to cover periods where there was no risk of loss, causing consumers to pay for unnecessary coverage. ix. Engaging in secret pre-arranged deals with insurance providers to secure policies from specific companies, disregarding consumers' interests. x. Mismanaging escrow accounts by seizing funds for exorbitant force-placed insurance premiums, leading to significant shortages and inflated payment obligations for Plaintiff and the Class.

119. Defendant's conduct also violated the FCEUA, including but not limited to:

a. Imposing charges for force-placed insurance policies that were not authorized by the agreement creating the debt or permitted by law, in violation of 73 P.S. § 2270.4(b)(5).

b. Using false or misleading representations regarding the necessity and cost of force-placed insurance, in violation of 73 P.S. § 2270.4(b)(6).

c. Engaging in unconscionable collection practices by imposing unjustifiably high premiums and mismanaging escrow accounts, in violation of 73 P.S. § 2270.4(b)(10).

120. Defendants' improper and misleading notices, combined with its deceptive practices in selecting and imposing force-placed insurance policies, constitute unfair and deceptive acts or practices under the UTPCPL, including false pretense, misrepresentation, and fraudulent concealment, within the meaning of 73 P.S. § 201-2.

121. As a direct and proximate result, Plaintiff and the prospective Class are entitled to damages as stated throughout the instant Complaint.

122.    Plaintiff and the Class are entitled to recover actual damages as well as up to three times the amount of their actual damages ("treble damages") at the Court's discretion, along with reasonable attorney's fees and costs, pursuant to 73 P.S. § 201-9.2(a).

123.    Plaintiff and the Class seek court-ordered relief of an equitable nature against Defendant, including, but not limited to, declarations that Defendant's practices are unlawful, unfair, unconscionable, and/or deceptive, and orders enjoining Defendant from continuing such conduct.

124.    Plaintiff and the Class seek disgorgement and restitution of all premiums and fees paid for unnecessary force-placed insurance policies, plus interest on damages at the legal rate, and/or three times the amount of their economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff and the Class and award the following relief:

125.    That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Plaintiff's counsel as counsel for the Class;

126.    That the Court adjudge and declare Defendant's conduct, as alleged herein, to be unlawful under applicable federal and state laws, including the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301 et seq., RESPA, 12 U.S.C. § 2607, the UTPCPL, and common law fiduciary duties;

127.    That Plaintiff and the Class be awarded statutory damages pursuant to RESPA §
8(d)(2), 12 U.S.C. § 2607(d)(2), and statutory penalties as permitted under the Dodd-Frank Act 12
U.S.C. § 5301 et seq;

128.    Compensatory, consequential, and general damages in an amount to be determined
at trial;

129.    Three times ascertainable losses, together with other appropriate legal or equitable
relief pursuant to 73 P.S. § 201-9.2(a);

130.    Restitution and/or disgorgement of Defendant's ill-gotten gains, including all
premiums, fees, and kickbacks unlawfully charged or received, and that an equitable constructive
trust be imposed over such amounts for the benefit of the Class;

131.    That the Court enter a judgment declaring that Defendant must cease the unlawful
practices described herein and implement adequate policies to ensure such conduct does not recur,
including but not limited to:

a)    Prohibiting Defendants from sending deficient, false, or misleading notices to
consumers;

b)    Prohibiting Defendant from force-placing insurance where the borrower has an
existing policy meeting the loan requirements;

c)    Prohibiting Defendant from force-placing insurance in excess of the replacement
cost of the property improvements;

d)    Prohibiting Defendant from purchasing force-placed insurance from any
subsidiary, affiliate, or entity in which Defendant has a financial interest;

e)    Prohibiting Defendant from splitting fees, giving or accepting kickbacks or referral
fees, or accepting anything of value in relation to force-placed insurance;

f)  Requiring Defendant to make reasonable efforts to reestablish borrowers' existing insurance policies if a lapse occurs;

g)  Requiring Defendant to purchase force-placed insurance only at commercially reasonable rates; and

h)  Prohibiting Defendant from backdating force-placed insurance policies unless there is clear evidence of damage or claims arising during any lapse period;

i)  Punitive damages;

j)  Costs and disbursements of this action;

k)  Pre- and post-judgment interest as permitted by law;

l)  Reasonable attorneys' fees pursuant to applicable law; and

m) Such other and further relief as it deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury as to all claims in this action.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: January 24, 2025                By: _____
Joshua P. Ward (Pa. I.D. No. 320347)
Travis A. Gordon (Pa. I.D. No. 328314)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue, Suite 201
Pittsburgh, PA 15206
Counsel for Plaintiff and Prospective Class

Phone: 412-545-3015
Email: jward@jpward.com

39