**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HELENA GRAHAM,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **PHH MORTGAGE CORPORATION, AMERICAN SECURITY INSURANCE COMPANY, ASSURANT INC. NEWREZ LLC** | **NO.  25CV432** |
| | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

The Court is called upon to confront several unresolved questions concerning the Real Estate Settlement Procedures Act ("RESPA"). The task before the Court is perhaps best captured, with slight adaptation, by the words of Aretha Franklin: "R-E-S-P-[A]-C-T—Find out what it means to me," guided by the well-settled canons of statutory interpretation.

At its core, this suit arises from the placement of hazard insurance coverage by American Security Insurance Company ("ASIC") on Plaintiff Helena Graham's property and the subsequent assessment of charges for that coverage by PHH Mortgage Corporation ("PHH"), acting through NewRez, LLC.  Graham brings this suit on behalf of herself and a putative class of similarly situated homeowners who have or had residential mortgage loans owned or serviced by PHH and who, in connection with those loans, were required to pay for lender-placed or "force-placed" hazard insurance policies allegedly imposed in violation of federal and state law. She asserts claims against PHH, NewRez, ASIC, and ASIC's parent company, Assurant, Inc., for violations of RESPA, 12 U.S.C. §§ 2605 and 2607, and its implementing regulation, Regulation

1

X, 12 C.F.R. pt. 1024 (Counts I & II); violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Counts III & IV); breach of contract

(Count V); declaratory relief (Count VI); breach of fiduciary duty (Count VII); and violations of

the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.1 *et seq.*, as made

actionable through the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73

P.S. § 201-1 *et seq.* (Count VIII[1]).  Defendants now move, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss Graham's Second Amended Complaint for failure to state a claim

upon which relief can be granted.  For the reasons that follow, Defendants' motions will be

granted in part and denied in part.

## I.    FACTUAL BACKGROUND

On December 30, 1999, Plaintiff Helena Graham purchased the Pennsylvania home in

which she currently resides, financing the purchase through a mortgage loan.[2]  After several

refinancings, the mortgage presently encumbering the property was executed in 2005 between

Graham and Argent Mortgage Company in the original principal amount of $225,000.  Graham

alleges that Argent was acquired by Citigroup in 2007.  She further alleges that the mortgage was

later "assigned" to Ocwen Loan Servicing in 2017 and that, in 2018, Ocwen acquired PHH

Mortgage Corporation, after which Graham's loan was "transferred to PHH for servicing."[3]

---

[1] In the Second Amended Complaint, this Count is labeled as "Count VII," but this appears to be a typographical error as it immediately follows another section also labeled as Count VII. So the Court will treat it as though Plaintiff meant to label the second iteration of Count VII as Count VIII.

[2] The Second Amended Complaint does not make clear who the original mortgage was with.  While stating the "true and correct copy of Plaintiff's mortgage, executed on December 30, 1999, is attached hereto as Exhibit A," Exhibit A is rather a copy of a mortgage executed on December 20, 2005 between Graham and Argent Mortgage Company. Given Graham's timeline of refinancing listed in the Second Amended Complaint, the Court assumes the attached mortgage is the most recent operative mortgage document, corresponding to the last time Graham refinanced, which Graham inconsistently labels as "[o]n January 4, 2006, Plaintiff refinanced again with Argent for $225,000."

[3] Mortgage servicing is distinct from mortgage lending; it refers to the "administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes.  Servicing is usu[ally]

Section 5 of that mortgage agreement requires Graham to maintain adequate, continuous hazard insurance on the property.  It provides:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.

If Graham fails to maintain the required coverage, the mortgage authorizes the lender to obtain insurance itself and to charge the cost to her.  Specifically, the mortgage states:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense . . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

The mortgage also includes an escrow component allowing monthly mortgage payments to be applied to property taxes and hazard insurance premiums.

From January 2022 through April 2023, Graham maintained her own hazard insurance policy through American Security Insurance Company ("ASIC") and paid a monthly premium of $239.38. [4]  In April 2023, she obtained a new hazard insurance policy through Openly, Inc. Although she obtained the Openly Policy in April 2023, the policy was backdated to provide coverage beginning March 28, 2023, and continuing through March 28, 2024, for a total premium of $2,899.72.

---

performed by the lender of the lender's agent, for a fee." *Mortgage servicing*, Black's Law Dictionary (12th ed. 2024).

Graham does not indicate clearly what she means by alleging that the mortgage was "assigned" to Ocwen Loan Servicing.  In this context, "assigned" could refer either to an assignment of the note and mortgage (i.e., the underlying contractual rights) or merely to a transfer of servicing rights.  Regardless, Graham's allegations indicate that PHH received only the servicing rights, because she does not separately allege that PHH was assigned ownership of the loan or any contractual right to receive principal and interest.

[4] Graham makes no reference to what coverage she had before this time.

Graham alleges that, despite the Openly policy being in effect, PHH—acting through NewRez, LLC, another mortgage servicer, and issuing statements on NewRez letterhead identifying "c/o PHH Mortgage Services"—assessed monthly hazard insurance charges associated with an ASIC policy (the "Refunded Insurance Placement").  According to the Second Amended Complaint, those charges appeared on Graham's monthly mortgage statements as follows: an October 2, 2023 statement showing a $799.00 escrow charge for hazard insurance posted September 12, 2023; a November 6, 2023 statement showing a $199.75 hazard insurance charge posted October 5, 2023; and a December 7, 2023 statement showing two $199.75 hazard insurance charges posted November 7, 2023 and December 6, 2023.  On or about January 3, 2024, Graham's monthly mortgage statement reflected an "Insurance Refund" of $1,398.25, posted on December 28, 2023, reversing the total amount previously charged for the overlapping ASIC coverage.  Graham alleges that, before the initial 2023 charge, Defendants neither requested proof of hazard insurance nor advised her that they intended to obtain insurance on her behalf.  She further alleges that Defendants did not later acknowledge or explain either the placement or the refund.

Graham further alleges that, on or about December 21, 2023, while her Openly policy remained in effect,  Defendants uploaded to her online servicing portal,[5] maintained by NewRez, a letter purporting to notify her that they had been advised by her insurer that her Openly policy was "canceled for Underwriting"[6] and her hazard insurance policy was set to expire on March 28, 2024.  Under a section entitled "What Needs to Be Done?," the letter stated:

---

[5] Graham was enrolled in Defendants' "paperless" program such that loan communications were to be delivered through the portal.

[6] The National Association of Insurance Commissioners defines "underwriting" as "the process by which an insurance company examines risk and determines whether the insurer will accept the risk or not."  Underwriting, Nat'l Ass'n of Ins. Comm'rs, https://content.naic.org/glossary-insurance-terms (last accessed Mar. 16, 2026).

> We require a copy of your insurance renewal declaration page on an annual basis. Please contact your Agent/Insurance Company to provide us with a reinstatement notice or copy of your new policy.  Proof of coverage can be sent to the address shown above or sent via email to mortgagefamily@mycoverageinfo.com or uploaded to our website at Mycoverageinfo.com/Mortgagefamily.

Graham's Openly policy expired on March 28, 2024.  She did not obtain replacement coverage immediately, and her property therefore went uninsured.

Several months later, on July 12, 2024, while no hazard insurance covered the property, Defendants procured a force-placed insurance policy through ASIC, effective retroactively from March 28, 2024, the date the Openly policy expired, through February 28, 2025 (the "Unrefunded Insurance Placement").  Graham alleges that she was notified of this placement by a letter mailed on or about July 18, 2024, rather than through the online portal.  That letter advised her that force-placed coverage had been obtained pursuant to the mortgage documents, that the premium had been billed to escrow, and that Defendants would cancel the policy upon receipt of proof of acceptable insurance, with any unused premium refunded.  The letter also "strongly urge[d]" Graham "to contact an insurance agent and/or company of [her] choice to purchase coverage,"  and further cautioned that the coverage insured only the structure of the house, did not protect personal property or provide liability coverage, and may carry significantly higher premiums because the carrier had issued the policy without the benefit of normal underwriting guidelines.

The force-placed policy carried a total annual premium of $36,951.00.  Graham's July 1, 2024 mortgage statement reflected an escrow balance of $5,506.80, but her August 7, 2024 statement reflected a July 12, 2024 hazard insurance charge of $15,396.25, reducing the escrow balance to negative $13,895.56.  Graham further alleges that the remainder of the annual premium was billed in monthly installments of $3,079.25 and that, by December 2024, her

escrow deficit had reached $22,863.88.

Finally, Graham alleges that while the force-placed insurance policy remained in effect, she obtained new hazard insurance coverage through the Insurance Placement Facility of Pennsylvania on January 2, 2025.

## II.    LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" do not suffice.  Id. at 683.  Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation.  *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

In evaluating a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11.

A complaint must also be dismissed where, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Thus, dismissal under Rule 12(b)(6) is appropriate where the complaint is barred by a dispositive issue of law.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Documents "integral to or explicitly relied upon in the complaint" may also be considered without converting a motion to dismiss into one for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted and emphasis removed).

## III.    DISCUSSION[7]

### A.  RESPA & Regulation X

RESPA was enacted to "protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process, both in the actual settlement process and in the 'servicing' of a federally related mortgage loan."  *Gehman v. Agent Mtg. Co., LLC*, 726 F. Supp.2d 533, 540 (E.D. Pa. 2010); *see also* 12 U.S.C. § 2601(a).  In 2010, RESPA was amended through the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L.

---

[7] ASIC, ASIC's parent company Assurant, Inc., (together, the "Assurant Defendants"), and NewRez, each invoke the filed-rate doctrine to dismiss all of Graham's claims against them.  "The filed rate doctrine provides that a rate filed with and approved by a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers."  *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009).  "Once an insurance rate is filed with the appropriate regulatory body, [courts] have no ability to effectively reduce it by awarding damages for an alleged overcharge: the filed-rate doctrine prevents courts from deciding whether the rate is unreasonable or fraudulently inflated."  *Leo v. Nationstar Mortg. LLC*, 964 F.3d 213, 218 (3d Cir. 2020).  But the doctrine has no application here.  Graham does not ask the Court to calculate a reasonable rate or to award the difference between a "proper" rate and an allegedly inflated one. Instead, she challenges the allegedly unlawful placement of force-placed insurance and contends that, because the placement itself was unlawful, the full amount charged is recoverable as damages.

No. 111–203, 124 Stat. 1376 (2010).  The Act created the Consumer Financial Protection Bureau

(the "CFPB"), and charged it with prescribing such rules, regulations, and interpretations "as

may be necessary to achieve" RESPA's purpose. 12 U.S.C. § 2617(a).  One such implementing

regulation, Regulation X, was repromulgated by the CFPB in 2013 and became effective on

January 10, 2014.  *See Mortgage Servicing Rules under the Real Estate Settlement Procedures

Act (Regulation X)*, 78 Fed. Reg. 10696–899 (February 14, 2013) (codified at 12 C.F.R. pt.

1024).

### i.    *12 U.S.C. § 2605 and 12 C.F.R. § 1024.37*

Graham first avers that Defendants violated § 2605(k) and 12 C.F.R. § 1024.37(c) and

(d).[8]

---

[8] Graham also asserts that Defendants violated 12 U.S.C. § 2605(m) and 12 C.F.R. § 1024.37(h).  Both provisions require that charges "related to force-placed insurance," other than charges "subject to State regulation as the business of insurance," be bona fide and reasonable.  *See* 12 U.S.C. § 2605(m); 12 C.F.R. § 1024.37(h).  Graham argues that charges assed in violation of Regulation X's notice provisions are not bona fide or reasonable.  Defendants argue that neither provision applies here because the premiums at issue in this lawsuit were charged subject to state regulation as the business of insurance.

Graham does not dispute that the premium itself was subject to state insurance regulation.  Instead, she asserts that she does not challenge the reasonableness of state approved rates but rather challenges the unlawful conduct through which force-placed insurance was imposed, and that "[t]he statute expressly preserves federal regulation of charges related to force-placed insurance apart from those subject to state regulation as the business of insurance, reflecting Congress's intent to draw a line between state control over insurance pricing and federal control over mortgage servicing conduct."  But Graham provides no support for her assertion that 12 U.S.C. § 2605(m) or 12 C.F.R. § 1024.37(h) imposes liability based on an allegedly unlawful force-placement "process" for a state-regulated insurance policy.  Nor has the Court found any decision adopting that reading.

Graham contends that denying her claims under these provisions would allow servicers to evade federal notice requirements whenever an insurer files its rate with a state regulator.  That is incorrect.  The alleged conduct is already addressed by the provisions under which Graham seeks relief.  Accepting Graham's reading would render superfluous the provisions that expressly govern the process for imposing force-placed insurance.  *See* 12 U.S.C. § 2605(k), (l).  "The canon against surplusage counsels against adopting interpretations that render a statute 'superfluous, void, or insignificant.'"  *United States v. Milchin*, 128 F.4th 199, 202 (3d Cir. 2025) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  And "[w]hen a statutory construction 'render[s] an entire subparagraph meaningless' . . . the canon against surplusage applies with special force."  *Pulsifer v. United States*, 601 U.S. 124, 125 (2024) (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018)).  Graham's proffered interpretation would do exactly that: render 12 U.S.C. § 2605(k) and (l) meaningless.

Therefore, under no set of facts could Graham find liability under 12 U.S.C. § 2605(m) and 12 C.F.R. § 1024.37(h) for the process surrounding the force-placement of hazard insurance in this case.  Accordingly, Graham's claims in Count I are dismissed with prejudice to the extent they seek relief under 12 U.S.C. § 2605(m) and 12 C.F.R. §

8

Preliminarily, even though Graham appears to assert separate claims under 12 C.F.R. § 1024.37(c) and (d), those claims are pursued *through* RESPA and not through separate causes of action.  12 C.F.R. § 1024.37(c) and (d) implement 12 U.S.C. § 2605(l).  *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696, 10766-772.  "[T]o violate a regulation that lawfully implements [a statute's] requirements *is* to violate the statute."  *Glob. Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 54 (2007).  "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Any private right of action Graham may assert under Regulation X therefore must derive, if at all, "from the independent force of" the statutory provision under which the regulation was promulgated.  *Id*. at 286.  "[I]t is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute."  *Id*. at 284.  Accordingly, any such claim would still be enforced through RESPA and would remain subject to its requirements.  *See*, *e.g.*, *Brewer v. Wells Fargo Bank, N.A.*, 2017 WL 1315579, at *4 n.4 (N.D. Cal. Apr. 6, 2017) ("The Court notes that while Plaintiffs separate their claims with regard to 'RESPA' and 'Regulation X,' both claims are governed by RESPA, as Regulation X is merely a part of the RESPA statute."); *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If the servicer fails to respond adequately to the borrower's notice of error [as Regulation X requires], then the borrower has a private right of action to sue the servicer under RESPA."); *Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp.3d 1090, 1098 (S.D. Ohio 2022) ("[T]his Court likewise concludes the NOE regulations codified at § 1024.35

---

1024.37(h) as amendment would be futile.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that allowing further amendment of a complaint is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted").

of Regulation X are enforceable by way of a private right of action under RESPA.").

Turning to Graham's claim, she argues that Defendants violated 12 U.S.C. § 2605(k)(1)(A), which requires a servicer to have a "reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance" before obtaining force-placed insurance.  Graham contends that Defendants' alleged failures to comply with Regulation X provisions 1024.37(c) and (d) in connection with both the Refunded Insurance Placement and Unrefunded Insurance Placement "constitute direct violations of 12 U.S.C. § 2605(k)(1)(A)."

12 U.S.C. § 2605(l) provides that a servicer shall not be construed as having "a reasonable basis for obtaining force-placed insurance unless the requirements of this subsection have been met."  12 U.S.C. § 2605(l).  That subsection then sets forth certain notice requirements, which 12 C.F.R. § 1024.37(c) and (d) purport to implement.

Under § 1024.37(c), a servicer may not assess any premium or fee related to force-placed insurance unless it first sends an initial notice.  As pertinent here, that notice must state: (1) "that hazard insurance is required on the borrower's property, and that the servicer has purchased or will purchase, as applicable, such insurance at the borrower's expense," *see* 12 C.F.R. § 1024.37(c)(2)(vi); and, (2) that insurance purchased or to be purchased by the servicer "[m]ay cost significantly more than hazard insurance purchased by the borrower" and may "[n]ot provide as much coverage as hazard insurance purchased by the borrower;" *see* 12 C.F.R. § 1024.37(c)(2)(ix).  In addition to the initial notice, § 1024.37(d) requires a reminder notice be sent "at least 15 days before a servicer assesses on a borrower a premium charge or fee related to force-placed insurance" and prescribes the content that notice must contain.  *See* 12 C.F.R. § 1024.37(d)(1).

As to the Refunded Insurance Placement, Graham alleges that "[n]o initial or reminder notices of any kind were sent to [Graham] before or during this coverage period" in violation of § 1024.37(c) and (d). As to the Unrefunded Insurance Placement, Graham alleges that the first letter Defendants sent "fail[ed] to state that PHH intended to purchase insurance on [Graham's] behalf, fail[ed] to disclose that such coverage could be significantly more expensive and provide less protection, and fail[ed] to warn that [Graham] would be liable for the cost of any coverage purchased." She further alleges that the second letter did not qualify as a reminder notice under § 1024.37(d) because it was not sent before hazard insurance was placed and did not contain the content required by that subsection.

Graham seeks relief for Defendants' alleged violations of 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.37(c) and (d) pursuant to 12 U.S.C. § 2605(f), which creates a private right of action under RESPA and provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure." *See* 12 U.S.C. § 2605(f); *see also Conway v. U.S. Bank, Nat'l Ass'n*, 2019 WL 936649, at *4 (E.D. Pa. Feb. 22, 2019) ("RESPA allows for a private right action under [§] 2605 which governs mortgage servicing and escrow administration.").

### a. Application to Insurance Providers

ASIC and ASIC's parent company Assurant, Inc., (together, the "Assurant Defendants") argue that Graham's claims against them in Count I must be dismissed because neither 12 U.S.C. § 2605 nor 12 C.F.R. pt. 1024 applies to them, as they are not servicers. By their plain terms, 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.37(c) and (d) impose duties only on servicers, not on insurers or other entities. *See, e.g.*, 12 U.S.C. § 2605(k) ("A servicer of a federally related mortgage shall not . . ."); 12 C.F.R. § 1024.37(c)(1) ("the servicer must . . . "); *id.* §

11

1024.37(c)(3) ("A servicer must . . ."); *id*. § 1024.37(c)(4) ("a servicer may not . . ."); *id*. §

1024.37(d)(1) ("A servicer may not . . ."); *id*. § 1024.37(d)(3) ("A servicer must . . .").

Additionally, although 12 U.S.C. § 2605(f)—the provision pursuant to which Graham seeks

relief—does not mention servicers explicitly, *see* 12 U.S.C. § 2605(f)("*[w]hoever* fails to comply

with any provision of this section shall be liable to the borrower for each such failure[.]")

(emphasis added), as mentioned above, only "servicers" can fail to comply with the provisions

Graham invokes here, namely 12 U.S.C. § 2605(k)(1)(E) and 12 C.F.R. § 1024.37(c) and (d).  It

follows that only servicers may be "liable to the borrower" for such failures under 12 U.S.C. §

2605(f).

   A "servicer" is the "person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2);

*see also* 12 C.F.R. § 1024.2 ("*Servicer* means a person responsible for the servicing of a

federally related mortgage loan.").  "Servicing," in turn, means "receiving any scheduled

periodic payments from a borrower pursuant to the terms of [the] loan" and "making the

payments of principal and interest and such other payments with respect to the amounts received

from the borrower as may be required pursuant to the terms of the loan."  *id.* § 2605(i)(3); 12

C.F.R. § 1024.2 ("*Servicing* means receiving any scheduled periodic payments from a borrower

pursuant to the terms of any federally related mortgage loan . . . and making the payments to the

owner of the loan or other third parties of principal and interest and such other payments with

respect to the amounts received from the borrower as may be required pursuant to the terms of

the mortgage servicing loan documents or servicing contract.").  Nothing in those definitions

encompasses the provision of hazard insurance on the property.

   Graham argues that she seeks to hold the Assurant Defendants liable not as insurers, but

as participants in allegedly unlawful servicing conduct undertaken by PHH and NewRez.

12

According to Graham, that alleged participation is enough because "[t]he Third Circuit has repeatedly emphasized that RESPA liability turns on participation in prohibited conduct, not on entity classification alone."  Graham's reading of this Circuit's law is not entirely correct.

The Third Circuit has held that the language of § 2605 "defining a servicer is controlling," and, on that basis, has dismissed claims asserted against non-servicers. *See Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 125 (3d Cir. 2010).  Although the court acknowledged that "there may [] be an instance in which the actions of the original lender clothe another with apparent authority as a 'servicer,'" Graham advances no such theory here. *Id*. at 125 n.4.

Graham also has identified no authority treating a hazard-insurance provider as a servicer, and this Court has found none.  *Alston*, on which Graham relies for the proposition that "non[-]servicer entities, including insurers and reinsurers, may be held liable under RESPA where they participate in or benefit from unlawful arrangements", 585 F.3d at 753, involved § 2607, whose text applies to "any person", not § 2605 whose text applies to "servicers", and is therefore inapposite.  *See Christiana Tr. v. Riddle*, 911 F.3d 799, 805 (5th Cir. 2018) ("When Congress chose to impose RESPA duties more broadly, it did so clearly and explicitly . . . . [§ 2607] states that 'no person' shall engage in the forbidden conduct.  But Congress chose a narrower set of potential defendants for the violations [of § 2605].  The difference matters."); *see also Digital Realty Trust, Inc. v. Somers*, 583 U.S. 149, 161 (2018) ("[W]hen Congress includes particular language in one section of a statute but omits it in another," we "presume[] that Congress intended a difference in meaning.").  Nor does *In re Coppola*, 596 B.R. 140, 149-50 (Bankr. D.N.J. 2018), on which Graham also relies, compel a different result. That case held only that a loan servicer's RESPA obligations may extend beyond conduct that "essentially amounts

13

to accepting and remitting payments"; it did not hold that a hazard-insurance provider qualifies as a servicer.  *See id*. at 154-55.  Accordingly, Count I shall be dismissed insofar as it seeks to impose liability on the Assurant Defendants.

### b.  Damages

PHH argues that Graham's claims in Count I must be dismissed because of Graham's failure to plead damages.  A plaintiff asserting a RESPA violation must do more than allege a breach of a statutory duty; the plaintiff  "'must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605.'" *Byrd Est. v. Nationstar Mortg., LLC*, 2025 WL 3172843, at *3 (E.D. Pa. Nov. 13, 2025) (quoting *Giordano v. MGC Mortgage, Inc.*, 160 F. Supp.3d 778, 781 (D.N.J. 2016)).

### 1.  Actual Damages

PHH first argues that Graham's claims under Count I must be dismissed because the Second Amended Complaint is "devoid of any pleading of facts showing that the allegedly 'insufficient' notice(s) caused her any harm."  To adequately plead actual damages under RESPA, a plaintiff must "allege [] specific damage[s] suffered by [p]laintiff 'as the result of the alleged RESPA violations,'" thereby establishing "'a causal link between the alleged violations and the alleged damages.'"  *Jones v. Select Portfolio Servicing, Inc.*, 2008 WL 1820935, at *9-10 (E.D. Pa. Apr. 22, 2008) (quoting *Jones v. ABN AMRO Mortgage Group, Inc.*, 2008 WL 1722295, at *6 n .9 (E.D. Pa. Apr. 10, 2008)); *see also* 12 U.S.C. § 2605(f).  "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." *Wilson*, 48 F. Supp.3d at 799 (citing *Cortez v. Keystone Bank, Inc.*, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000)).

14

Graham does not specifically allege that she suffered any actual damages as a result of the Refunded Insurance Placement, and the Court can discern none.  Accordingly, because she has failed to plead actual damages, Count I must be dismissed insofar as it seeks actual damages based on the Refunded Insurance Placement.  With respect to the Unrefunded Insurance Placement, PHH argues that the Second Amended Complaint fails to establish that any damages were caused by Defendants' alleged failure to comply with the above-mentioned regulatory requirements.  Specifically, PHH contends that Graham's alleged damages arose because she "simply allowed the policy to lapse."  That lapse in coverage allowed Defendants, pursuant to the Mortgage Agreement, to obtain hazard insurance at her expense.  Addressing that the notice did not strictly comply with the applicable regulatory requirements, PHH contends that the Second Amended Complaint is "silent on how the alleged regulatory shortcomings of the notice [Graham] received influenced her decision to allow the lapse."  According to PHH, because Graham has not alleged that the deficient notices caused the lapse, her claim fails.  That argument is mistaken.

12 U.S.C. § 2605(f) requires only that actual damages be alleged "as a result of" the RESPA violation.  12 U.S.C. § 2605(f) ("In the case of any action by an individual, an amount equal to the sum of . . . any actual damages to the borrower *as a result of* the failure") (emphasis added).  The RESPA violation Graham alleges is not merely that Defendants failed to provide compliant notices; rather, it is that Defendants imposed force-placed insurance despite failing to satisfy the statutory notice prerequisites.  Thus, the alleged violation is the unlawful imposition of force-placed insurance and the assessment of premiums, not simply the antecedent notice defect viewed in isolation.  Indeed, Graham alleges that, "[b]y assessing premiums without satisfying these statutory prerequisites, Defendants caused [Graham's] mortgage account to be

15

treated as in default, manufactured an escrow shortage, and triggered a substantial and unwarranted increase in her monthly mortgage payment." In short, Graham alleges that the assessment of premiums itself caused her damages. That is sufficient.

The relevant statutory and regulatory provisions confirm as much. *See*, *e.g.*, 12 U.S.C. § 2605(k)(1)(A) ("A servicer of a federally related mortgage *shall not . . . obtain force-placed hazard insurance* unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance."); 12 C.F.R. § 1024.37(c) ("Before a servicer assesses on a borrower any premium charge or fee related to force-placed insurance, the servicer must" follow certain notice requirements.). Graham need not show that the conduct underlying the assessment of premiums—namely, the deficient notices themselves—independently caused her damages. She need only allege that the violation here, the allegedly unlawful assessment of force-placed insurance premiums, caused her damages. She has done so. Accordingly, PHH's motion to dismiss Graham's RESPA claims, insofar as they seek actual damages pursuant to the Unrefunded Insurance Placement, shall be denied.

### 2. Statutory Damages

PHH next argues that Graham fails to adequately plead statutory damages because the Second Amended Complaint "does not sufficiently allege a pattern or practice of non-compliance with RESPA."

Individual plaintiffs may recover statutory damages "in an amount not to exceed $2,000" if a defendant exhibits "a pattern or practice of noncompliance" with RESPA. *See* 12 U.S.C. § 2605(f)(1)(B). To state a claim for statutory damages under RESPA, "[t]he plaintiff must show that the alleged violations were the standard or routine way of operating for the allegedly non-compliant loan servicer." *Davis v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 6336473, at *7 (E.D. Pa. Dec. 12, 2017) (citing *McLean v. GMAC Mortg. Corp.*, 595 F. Supp.2d 1360, 1365 (S.D. Fla.

16

2009)).  Graham argues that the Second Amended Complaint "alleges that PHH employed uniform notice practices across its servicing portfolio, such that these statutory violations affected [Graham] and similarly situated borrowers in the same manner."  But conclusory allegations that Defendants "[have] a pattern and practice of violating RESPA with other customers," without "specific information or factual averments about these 'other customers' or the alleged violations by" Defendants is not enough to support a claim for statutory damages. *See Davis*, 2017 WL 6336473, at *7 (E.D. Pa. Dec. 12, 2017).

That leaves only the two alleged violations involving Graham herself: the Refunded and Unrefunded Insurance Placements.  "Though there is no specific number of offenses required to show a pattern or practice, the [c]omplaint must render it plausible that Defendants had a 'standard or routine way of operating' in violation of RESPA."  *Cottom v. Selene Fin. LP*, 2025 WL 2375220, at *9 (E.D. Pa. Aug. 14, 2025) (quoting *Sutton v. CitiMortgage, Inc.*, 228 F. Supp.3d 254, 264-65 (S.D.N.Y. 2017)).  Two instances are not enough.  *See Davis*, 2017 WL 6336473, at *7 (E.D. Pa. Dec. 12, 2017) ("[A]s further support of their claim for statutory damages, the Plaintiffs . . . offer their four letters to Ocwen and provide evidence that Ocwen did not respond to two of the four letters.  However, this is insufficient to prove a pattern or practice of violations of RESPA.");  *see also Sutton*, 228 F. Supp.3d at 265 (finding "three instances of noncompliance with RESPA . . . insufficient to establish a pattern or practice of noncompliance"); *Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017) (concluding that two underlying sets of violations "with no evidence of coordination" was insufficient to establish a pattern or practice).  Accordingly, Graham has failed to plead facts supporting a claim for statutory damages and her claims for statutory

17

damages as made against PHH pursuant to 12 U.S.C. § 2605(f) must be dismissed.[9]

### ii.    *12 U.S.C. § 2607*

Graham also alleges that Defendants violated § 2607 of RESPA.  Section 2607 prohibits receipt of unearned fees and commissions "incident to or a part of a real estate settlement service."  *See* 12 U.S.C. § 2607(a) ("No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."); 12 U.S.C. § 2607(b) ("No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.").  Graham alleges that the premiums associated with the ASIC hazard insurance obtained by PHH and NewRez included kickback and fee-sharing agreements among Defendants.

Each Defendant argues that Graham's claim under § 2607 fails because force-placed insurance is not a "settlement service" within the meaning of RESPA.  RESPA defines "[s]ettlement services" as "any service[10] provided in connection with a real estate settlement." 12 U.S.C. § 2602(3).  Regulation X defines "settlement" as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan," a process that "may also be called 'closing' or 'escrow' in different jurisdictions."  12 C.F.R. § 1024.2.  Although the Third Circuit has not addressed this precise issue, this Court

---

[9] NewRez's sole argument for dismissal of the claims in Count I was based on the filed-rate doctrine, which this Court previously addressed and rejected.  Accordingly, Graham's claim for statutory damages against NewRez survives.

[10] In describing the services often associated with settlement services, Regulation X includes the "[p]rovision of services involving hazard, flood, or other casualty insurance or homeowner's warranties."  12 C.F.R. § 1024.2.

agrees with the numerous courts that have held that the imposition of force-placed insurance, when not provided as part of the settlement or closing process, falls "beyond the scope of the statut[ory provision]." *Morris v. Wells Fargo Bank N.A.*, 2012 WL 3929805, at *15 (W.D. Pa. Sept. 7, 2012); *see also McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp.2d 928, 953-54 (N.D. Cal. 2012) ("Because RESPA covers only the provision of services 'in connection with' the closing of the loan, the Court cannot conclude that providing hazard insurance years after settlement qualifies as a settlement service."); *Lass v. Bank of Am., N.A.,* 2011 WL 3567280, at *6 (D. Mass. Aug. 11, 2011) (finding that the 15-year period between closing of the loan and the force-placement of insurance was too great in order to find that the service was "in connection with a real estate settlement"); *Guebara v. Saxon Mortgage,* 2011 WL 1670762, at *4 (E.D. Cal. May 3, 2011) ("Where the fees or charges at issue are imposed after settlement, RESPA is inapplicable.").

Accordingly, because PHH and NewRez allegedly obtained hazard insurance years after the underlying real estate settlement, § 2607 does not apply, and Graham fails to state a plausible claim for relief under that provision. Graham cannot, under any set of facts, plausibly allege that the First and Unrefunded Insurance Placements here were settlement services, given their remoteness from any settlement date. Amendment of her § 2607 claim would therefore be futile, and the claim shall be dismissed against all Defendants with prejudice. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1332.

### B. RICO

Graham avers that "[b]eginning no later than September 2023, Defendants PHH, acting as the servicer of Plaintiff's mortgage loan; NewRez, acting in conjunction with PHH to oversee and control servicing operations and borrower-facing communications; ASIC, acting as the FPI

provider; and Assurant, the parent company that wholly owns and controls ASIC through its insurance holding company system, engaged in a coordinated and ongoing scheme to impose unauthorized, inflated, and improperly noticed hazard insurance charges on Plaintiff's loan account," in violation of RICO, specifically 18 U.S.C. § 1962(c) and (d).

To state a plausible civil RICO claim, a plaintiff must adequately allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L., v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). A plaintiff must also plausibly allege that she was injured in her business or property as a result of the alleged racketeering activity. *Id.* A "pattern" of racketeering activity requires at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5); *Sedima, S.P.R.L.*, 473 U.S. at 496 n.14. Section 1961 sets forth an exclusive list of acts that may constitute racketeering activity for the purposes of RICO, including, among other things, murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and fraud. *See Annulli v. Panikkar*, 200 F.3d 189, 199 (3d Cir. 1999).

Here, Graham alleges five predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Specifically, she points to: (1) the monthly mortgage statements in connection with the Refunded Insurance Placement; (2) the initial notice letter sent in connection with the Unrefunded Insurance Placement; (3) the first mortgage statement reflecting the backdated insurance premiums in connection with the Unrefunded Insurance Placement; (4) the reminder note sent in connection with the Unrefunded Insurance Placement; and, (5) each mortgage statement subsequently sent in connection with the Unrefunded Insurance Placement. Each defendant argues that none of these alleged acts qualifies as being a sufficient predicate act and therefore Graham's RICO claims should be dismissed.

Whether Graham has adequately alleged predicate acts requires examination of the

20

elements of mail and wire fraud.  Those elements are: "(1) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme."  *Annulli v. Panikkar*, 200 F.3d 189, 200 n.9 (3d Cir. 1999).  A scheme to defraud does not have to "be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004), abrogated in part on other grounds by *Twombly*, 550 U.S. at 557.  Although the mailing, or wire transmission, itself is the actionable conduct, it must be in furtherance of an underlying fraudulent scheme.  *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir. 1991) ("The actual violation is the mailing, although the mailing must relate to the underlying fraudulent scheme.").  As the Third Circuit has explained, "[t]he scheme need not involve affirmative misrepresentation, but the statutory term 'defraud' usually signifies 'the deprivation of something of value by trick, deceit, chicane or overreaching.'"  *Id.* at 1415 (*quoting McNally v. United States,* 483 U.S. 350, 358 (1987)).

The Second Amended Complaint fails to allege a scheme to defraud.  This case is akin to *Weinberger v. Mellon Mortg. Co.*, 1998 WL 599192 (E.D. Pa. Sept. 10, 1998).  In *Weinberger* the alleged "scheme to defraud" was a "kickback scheme in which [the mortgage servicer] allegedly receive[d] a kickback or commission of sorts from [the insurance company] from excessively high insurance rates charged to mortgagors whose home insurance coverage was force-placed by [the mortgage servicer]."  *Id*. at *5.  The plaintiffs in *Weinberger* attempted to rely on letters mailed by the mortgage servicer as the predicate acts of mail fraud necessary to support a RICO claim but the court rejected that theory, finding that when a letter "warns in big and bold letters that [the mortgage servicer] will obtain a policy through [the insurance company] which may cost substantially more and provide less coverage unless plaintiffs provide evidence

21

of a replacement policy" and "'urges' plaintiffs to contact their insurance agent to obtain their own hazard insurance . . . [i]t is difficult to understand what plaintiffs claim the letter was intended to have defrauded them of or have deceived them into believing or doing." *Id*. The court further explained that "[i]f defendants were indeed scheming to deceive plaintiffs into allowing their insurance to lapse so that [the mortgage servicer] could charge [the insurance company's] higher rates, then, as articulated by the Third Circuit, 'none of [defendants'] alleged acts or omissions could be reasonably calculated to deceive a person of ordinary prudence and comprehension.'" *Id*. (citing *Kehr Packages*, 926 F.2d at 1413). The court therefore dismissed the RICO claim, concluding that "[t]he mailing cannot be in violation of the mail fraud statute where the so-called scheme could not have deceived anyone." *Id*.

Here, it is not plausible based on the facts alleged that the mortgage statements and letters sent by Defendants intended to deceive Graham when, as in *Weinberger*, they warned her that force-placed insurance would be purchased if she allowed her existing policy to lapse, informed her when that policy would lapse, and urged her to obtain replacement coverage when force-placed insurance was ultimately imposed.[11] Graham has therefore failed to plead facts sufficient to state a plausible RICO claim and those claims shall be dismissed.[12]

---

[11] Graham also alleges predicate acts relating to the Refunded Insurance Placement, based on Defendants' alleged failure to send any notices. Even assuming those alleged omissions could constitute predicate acts— a doubtful proposition considering the difficulty of identifying a scheme to defraud where Defendants refunded the full amount allegedly wrongfully charged—those acts alone could not sustain a RICO claim. A civil RICO plaintiff must plead a net injury to business or property, and Graham could not do so here because she alleges no actual monetary loss arising from the Refunded Insurance Placement. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (civil RICO requires "actual monetary loss, *i.e.*, an out-of-pocket loss").

[12] Graham also asserts a claim for RICO conspiracy. But because her substantive RICO claim fails, her conspiracy claim fails as well. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

### C. Breach of Contract

Graham next alleges that PHH and NewRez breached her mortgage contract through their purportedly unlawful imposition of hazard insurance.  PHH argues that Graham has not shown any contractual privity exists between PHH and Graham.  PHH is correct.

The mortgage agreement Graham references and attaches to the Second Amended Complaint is between Graham and Argent.  Graham alleges that "PHH serviced Plaintiff's loan and controlled whether to impose lender-placed insurance and how to apply related charges to escrow," but that is not enough.  Under Pennsylvania law, a defendant cannot be liable for breach of contract unless it is a party to the contract.  *See Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991), *aff'd*, 618 A.2d 395 (Pa. 1993) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."). Although Graham alleges that the mortgage was "transferred to PHH Mortgage Corporation for servicing," she pleads no facts explaining what the transfer entailed, or what rights or obligations, if any were transferred.  Moreover, courts generally hold that mortgage servicers are not in contractual privity with borrowers.  *See*, *e.g.*, *Jones v. PHH Mortg. Corp.*, 2024 WL 3639325, at *7 (D.N.J. July 31, 2024) ("[T]he majority of courts have held that loan or mortgage servicers are not in privity of contract with the borrower."); *Silvester v. Selene Fin., LP,* 2021 WL 861080, at *8 (S.D.N.Y. Mar. 8, 2021) (granting motion to dismiss because "[d]efendant was not a party to the Mortgage, and simply acting as the loan servicer is insufficient to create privity of contract between the parties.") (citing *Pereira v. Ocwen Loan Servicing, LLC*, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012).

To the extent Graham relies on an agency theory for her contract claim, that theory fares no better.  "[A]n individual acting as an agent for a disclosed principal is not personally liable on

23

a contract between the principal and a third party unless the agent specifically agrees to assume liability." *Bret Binder v. Weststar Mortg., Inc.*, 2016 WL 3762710, at \*19 n.9 (E.D. Pa. July 13, 2016) (citing *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 150 (Pa. Super. 2012)). Because the Second Amended Complaint does not allege that PHH agreed to assume liability under the agreement, any agency theory Graham may put forth fails. *Id*. ("The Amended Complaint fails to plead that either LoanCare or WestStar (acting as servicer) agreed to assume liability under the agreement."). Accordingly, Graham's breach of contract claims shall be dismissed.

### D. Declaratory Judgment

Graham brings a separate Count against the Assurant Defendants labeled "Declaratory Judgment," seeking a declaration that the insurance contract obtained from Defendant ASIC is invalid. But declaratory judgment is a remedy, not a separate claim. *See Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp.2d 555, 560 (E.D. Pa. 2011) (dismissing a separate count seeking declaratory relief, stating that "[t]he relief a plaintiff seeks, and the claims he asserts, are thus conceptually distinct components of a complaint, and there is no need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief."); *Prikis v. Maxatawny Twp.*, 2024 WL 3889098, at \*9 (E.D. Pa. Aug. 20, 2024) ("The Amended Complaint asserts a separate count for 'Declaratory Judgment;' but 'declaratory judgment[ ] is a form of relief—not an independent cause of action.' Count III is therefore dismissed with prejudice.") (citing *Mader v. Union Twp.*, 2021 WL 3852072, at \*8 (W.D. Pa. Aug. 27, 2021)). Thus, Graham's standalone count for declaratory relief shall be dismissed.

### E. Breach of Fiduciary Duty

Graham also asserts a claim that the Assurant Defendants breached their alleged

"fiduciary duty to act with loyalty, good faith, and due regard for the interests of the insureds" by issuing force-placed insurance coverage without ensuring compliance with Regulation X's notice requirements, imposing coverage retroactively, charging and retaining excessive premiums, engaging in undisclosed profit-sharing arrangements, and failing to disclose material facts about the policies.  But Graham pleads no relationship between her and the Assurant Defendants, contractual or otherwise.  Thus, she has not alleged that they have a fiduciary duty to her.  Absent such a duty, there can be no breach.  *See Caplen v. Sec. Nat'l Servicing Corp.*, 514 F. Supp.2d 746, 750 (E.D. Pa. 2007), *aff'd sub nom. Caplen v. SN Servicing Corp.*, 343 F. App'x 833 (3d Cir. 2009) (holding in the context of force-placed insurance that "[t]he claims against insurer SNI are dismissed" as "[t]he plaintiff is not a named insured in the SNI-issued policy" so therefore "SNI has no duty, contractual or fiduciary, towards the plaintiff").

### F.  UTPCPL/FCEUA

Graham finally alleges that Defendants violated the FCEUA, which prohibits debt collectors and creditors from engaging in unfair or deceptive acts or practices in connection with debt collection.  *See* 73 P.S. § 2270.4.  But there is no private right of action for consumers under the FCEUA.  *See Marshall v. Abdoun*, 2023 WL 2588166, at *10 (E.D. Pa. Mar. 20, 2023).  Instead, "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the . . . Unfair Trade Practices and Consumer Protection Law."  *See* 73 P.S. § 2270.5(a).  Accordingly, consumers may pursue FCEUA violations only through the UTPCPL's remedial provision.  Thus, to recover based on an alleged FCEUA violation, a plaintiff must plead not only conduct that violates the FCEUA, but also the elements necessary to state a UTPCPL claim.  *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), abrogated on other grounds by *Obduskey v. McCarthy &*

*Holthus LLP*, 586 U.S. 466 (2019) ("If the FCEUA can only be enforced to the extent the UTPCPL's private remedy is invoked, then it follows that Kaymark cannot state a claim for relief under the FCEUA if he cannot state a claim for relief under the UTPCPL.").

To state a claim under the UTPCPL, a plaintiff must show, as relevant here, that "the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices." *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646-47 (Pa. Super. 1999). The UTPCPL defines conduct that qualifies as "unfair methods of competition" and "unfair or deceptive acts or practices," *see* 73 P.S. § 201-2(4)(i)-(xxi), and Graham specifically invokes the catchall provision prohibiting "[f]raudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *See* 73 P.S. § 201-2(4)(xxi). She alleges that, "[i]nstead of acting lawfully and transparently, Defendants used their position of trust and control to deceptively impose unauthorized and inflated charges through a pattern of misconduct, including the issuance of notices that failed to meet legal requirements, the backdating of coverage, and the concealment of financial relationships with insurers."

But Graham's UTPCPL theory depends on the premise that Defendants' notices and imposition of coverage were confusing or misleading, and therefore deceptive. As discussed above in connection with Graham's RICO claim, Defendants' warning to Graham that force-placed insurance would be purchased if she allowed her existing policy to lapse, informed her when that policy would lapse, and urged her to obtain replacement coverage when force-placed insurance was ultimately imposed cannot be considered deceptive.

In addition, to state a claim under the UTPCPL's catchall provision, "a plaintiff must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854

26

A.2d 425, 438 (Pa. 2004) (citations omitted); *see also Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 222 n.4 (3d Cir.2008) ("A justifiable-reliance requirement, by contrast, requires the plaintiff to go further [than a mere causal connection]—he must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation."). Graham argues that reliance is established by her continued mortgage payments without understanding that the force-placed insurance charges had been unlawfully imposed.

Firstly, plaintiffs are charged with knowledge of the law and therefore Graham cannot just suppose that Defendants acted lawfully. *See Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) ("All citizens are presumptively charged with knowledge of the law."); *Anela v. Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986) (same). Even so, Graham does not allege that she would have refused to pay the insurance premiums had she known Defendants' imposition of hazard insurance was unlawful. *See McLean v. Big Lots Inc.*, 542 F. Supp.3d 343, 353 (W.D. Pa. 2021) (dismissing UTPCPL claim for failure to plead justifiable reliance where there were no allegations "that Plaintiffs would not have purchased the masks, but for representations regarding [the legality of the] sales tax"); *Lisowski v. Walmart Stores, Inc.*, 2022 WL 2763698, at *4 (3d Cir. July 15, 2022) (affirming dismissal of a UTPCPL claim for failure to plead justifiable reliance where there was "no indication" that the plaintiff purchased under the assumption that the item was tax free). Accordingly, Graham's FCEUA/UTPCPL claim must be dismissed.

An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE
**WENDY BEETLESTONE, C.J.**

27